Good afternoon, and may it please the court, my name is Rebecca Rady and I'm the appellant on behalf of the Lossmann's, Courtney Lossmann, Brian Richard, and their minor daughter at the time. She's now 18. I shall continue to refer to her. Your Honors, I brought this case on a very, very narrow issue to you and I want to spend my time, I'd like to reserve five minutes for rebuttal. I'm going to watch myself, but I'd like to reserve my or use my time here talking about the narrow issue and how and why it was brought as such a narrow issue. The issue presented on appeal is whether or not under Title IX law it is clearly unreasonable for the school to refuse or fail to use its Title IX policies in response to a report that another student has sexually assaulted. Don't we have a very recent case that deals with essentially that problem and says that that is not itself a basis for a Title IX claim, if they were, what was done was otherwise reasonable. To which case are you referring, Your Honor? Wait a minute, I am sure it was Karasek v. Regents of the University of California. April 20, 2020. And I'm familiar with that case. Yes, and I find your non-recognition a little peculiar, but go ahead. Pardon me? Well, go ahead. So, I did address that case in response and the issue that I have with that case and the distinction that I think is really important to make is that case says the failure to follow the policies is not in and of itself a violation. What we have here is not a failure to follow the policies. It's a failure to invoke the policies. And there's a material distinction between the failure to follow the policies and the failure to invoke the policies. And I think that distinction of itself is something that's really important to take note of. Because what we have here is we had a student that went and reported to her school counselor what had happened. And we had her mother ask over and over and over, what are the school's policies? What do we need to have them follow? And in response to that request that was made over and over, they were told the policies don't apply to you. And the big issue that I think makes this case so distinguishable from, and they're all, there's many case law that talks about, and I addressed that in the briefing, that the failure to follow verbatim what the policies are is not in and of itself. Now, by the way, one thing that I had real problems here in reading the papers here is nobody ever gives us the policy that you thought should have been invoked. It's not in the record. Isn't it? That's a curious thing. I don't believe that it is in the record. No, it isn't. So how am I supposed to know what they were supposed to have done? I think the curious thing, and the reason, Your Honor, that it's not in the record is because SAGE admitted that it didn't invoke the policies. And that's why I mean, if what they did actually is the same as the policies, and we have no way of knowing that because we don't have the policy. Because they admitted that they didn't invoke them. Well, they didn't invoke it, but they may have done exactly what it required. We don't know. And that's not the argument that was made below, which is part of the reason that, you know, that's why it's not included in the record, because that wasn't a contested issue below. The issue, as it was defended below, was we don't need to invoke the policies. It doesn't matter whether or not we invoke the policies. And so the reason that doesn't appear in the record as to, well, if we did the exact same thing. There's no good reason it doesn't appear on the record, but go ahead. Fair enough. I'm not saying it's not, it's both of you, but it certainly made evaluating the case very difficult. So the issue that I have with the failure to invoke the policies, because what you do see in the record over and over is the mother asking the board, what are the policies and how do we get them to be invoked? And what the school board told the mother is, and this is in the record at, the record submitted by the plaintiff at 24, the school board told the mother, the policies don't apply because this is off-campus conduct and the policies don't apply here. Doremus, Principal Doremus, who is the Title IX coordinator, Doremus, who is the Title IX coordinator, failed to correct that error, even knowing that it was wrong. This is a critical issue with respect to the deliberate indifference standard that doesn't apply. Tell me how you know that in Karasik, they quote, invoked the policy, but didn't follow it. I'm just, I'm reading it and it says it didn't, they didn't abide by the DCL's provisions. It doesn't say whether they formally invoked it in some sense or didn't. So they disregarded the DCL and its own policies. It doesn't sound like they didn't follow it. They disregarded it. When you speak in, they disregarded by terms of how quickly things were supposed to be processed and the timing of it being processed and those types of things. It was Karasik, the way I view the distinction between Karasik and what happened in this particular case, they didn't follow to the letter of the policy. And here they said the policy doesn't apply to all. You don't get to take advantage of the policy at all. It doesn't apply to you. Do you have any argument at all that what they actually did, aside from not invoking the policy, would violate Title IX? What the school actually did was not adequate under Title IX. Yes. The reason that we take the position that not invoking the policy... Now leave off the not invoking. Pardon me? If you leave off the not invoking, is what they did not compliant with Title IX? Suppose there were no policy. Suppose they didn't have a policy. But is what they did compliant with Title IX? No, Your Honor, it is not. Title IX does in fact require them to have a policy. You cannot bring a private right of action on the basis of not having a policy alone. But Title IX does require having a policy. When you get to the... So you're not going to answer my question, which is whether the steps they took... They had a policy, leaving off the fact that they didn't invoke the policy. Were the steps they actually took reasonable steps? No, they were not, Your Honor. Why? The first reason that the steps that they took were not reasonable steps... Let me reframe this a little bit. Some of the steps they took were not unreasonable. All of the steps taken in conjunction with each other were unreasonable as a whole. And the reason that all of the steps taken in conjunction with each other were unreasonable as a whole is because they looked at this girl who said, I have a sexual assault harassment complaint. What do I do about it? And they told her, we cannot do anything for you. The policies don't apply. If you want the school to help you, you need to go to the police. The other things that the school did that I think are very problematic are when they told her before the police order was put into place. And I think there are significant problems with the deference to the police that was involved here. But when the school told her prior to implementation of the TRO, if you're uncomfortable sitting in class next to the boy who assailed you, go to the counselor's office. If we're looking at the equal access to an educational opportunity between a girl who has claimed to have been assaulted and a boy who has done the assaulting, when the response of the school is, if you're uncomfortable sitting in class next to your assailant, go ahead and leave class and miss out on that instructional opportunity. That's a significant problem. The reason Title IX policies are required to exist is so that these issues are dealt with from the front end in accordance with a policy that has been vetted for the due process of rights of both the accused and the respondent. And so the dismissal of the application of the policy in this case, I believe, and I urge this court to look at, is in and of itself deliberately indifferent. I say deliberately because time and again, when the family went to the school and said, what do we do to get the policy, the due process policy that was designed for the protection of both students to apply, what do we do? The school lied to them repeatedly. I say indifference because if you look at Mike Doremus's explanation as to why the policy didn't apply. What they did do, I mean, this is why I find it so hard to operate without the policy. They did call in. They didn't do nothing. First of all, they counseled her at great length. They called in the young man. They told him to leave her alone. They separated them to some degree. They ended up measuring the classrooms in order to comply with the restraint order. And she did fill out a form. They did react to the form. Apparently, they have some other form, maybe. I don't know what it says. And I don't know what would have happened differently if they followed their policy. The most important thing that would have happened differently, in my view, had they followed the policy, is they wouldn't have been lying to this girl about why they didn't. And I think that's a huge, significant thing that this court needs to look at. Is that why they lied? I'm sorry. They wouldn't have been lying to her and her family about why they didn't. And I think that is so significant in cases like this because you went to tons of people saying, I want to know what the process is to protect me. And Mike Doremus, who is the representative of the school, the other people who did some stuff to help out, that wasn't the official school actions. But what Mike Doremus' take on this was, was the dismissive. And this is where we get to the indifference. Dismissively, this is ordinary teenage angst. It's no different than a regular breakup. And we're going to treat it as such. So when the girl says, why aren't you treating my sexual assault as a sexual assault? She's first told it happened off campus. She's next told during the course of the litigation, oh, you filled out the wrong form. The real reason they weren't treating her sexual assault as a sexual assault is because the Title IX coordinator, Michael Doremus, believed in his head that this was not enough of an assault to justify using their procedures. What exactly is the application of Title IX in these circumstances? My understanding is that it doesn't reach the assault itself. It reaches any spin-off in the school. Is that wrong? That's exactly right. So Title IX is about the school's response to the sexual assault. No, it's about the school's response to the in-school ramifications of the out-of-school sexual assault. Okay, so that's a more precise articulation of what I'm trying to say. So the issue that I have with Doremus's, Principal Doremus, who is the Title IX coordinator, is without even speaking to AR, the very girl who is experiencing the ramifications of the sexual assault, he shrugs his shoulders and says, it happened a few months ago. This is ordinary teenage breakup stuff. And he declined to invoke the policies, followed what the police told him to do, measuring the classrooms and all that. That wasn't because they were following their Title IX policies. That's because they were following police orders and moved on like that. So the school's response in and of itself had a discriminatory impact on her because of the way they just shrugged their shoulders and said, you weren't assaultive enough. To invoke the policy, but didn't actually come out and tell her that. They just shrugged their shoulders at it. You want to reserve the time. We're down to your last minute. I'll reserve the remainder of it for my last minute. Thank you. Mr. Walther. Thank you. My name is Brett Walther. I'm representing the SAGE International School District, charter school, I should say. And I will be responding to the issues here. Just want to say at the very beginning, that was awkward. I think the problem with Title IX is the fact that the statute itself is phrased as a prohibition. As an entity receiving funds, you're prohibited from discriminating. That prohibition works great in the official policy cases, where there's an official policy to, or a common one is admissions, that is discriminatory. It is your policy to discriminate on admissions, and that's prohibited. The more difficult case is, I'll call them the official decision cases, where you have a third party, whether it's a teacher or a student, that are causing the harassment. And that's a key point. And it's not a prohibition against discriminating, but it's actually a requirement to act to a certain degree to avoid a claim of discrimination. So the language of the statute kind of calls that difficult. What's your response to counsel's argument that the Karasek case doesn't apply because there was a failure to invoke rather than a failure to follow? I think it's pretty clear. I think it's a distinction without a difference that the courts, from the Supreme Court through several circuit courts, have said a failure to follow policy, and I'll argue whether it's not doing it at all or not doing it properly, is nothing more than a negligent decision at best. There's many reasons not to follow or invoke a policy, many if not most of which are not discriminatory. That's what's not addressed here at all, in this case by the appellants, is that the decision not to invoke, there's no evidence that that was due to discrimination based on sex. There were other considerations, and maybe I'll walk into kind of her arguments to explain that more thoroughly. And reading her clarification of the issues statement, she says, standing alone does an educational institution's refusal to invoke timeline policies and procedures in response to reports of a sexual assault constitute an act of intentional discrimination on the basis of sex sufficient to give rise to a private cause of action or Title IX. And there's several worded terms there. One is refusal. There was the decision not to apply one policy versus another. They applied the harassment policy. They perceived this situation as potentially harassment at school. What does that mean? It's very mysterious to me. Since Title IX does cover sex-based harassment, why is there a separate harassment policy? That's different. Is it different? I mean, I go back to my frustration with not having the actual policy. And that might be part of the problem here is there is a redundancy, because if you look at the elements of a Title IX claim that's expressed by Davis, the second element is that the harassment must be severe. And the third element is that they must have knowledge of the harassment. And then the fourth element is that they act with deliberate indifference and basically allow the harassment to continue. She filled out the harassment form. She said what the harassment was. The harassment, as I understand it, was after this school-based harassment was that after this off-campus sexual assault, she was uncomfortable being around him. And he was making bad faces at her. And he was hanging out with her friends. And there's kind of a sequence of events here from the initial reports until the decision as to how to respond. And the first was her actual report was, this happened to me two months ago during a date and I didn't like it, which goes to the second loaded term, a sexual assault. All sexual assaults are not equal. This one was an unwanted touching. He requested to touch her beneath her. Apparently it was enough to get a restraining order on from the court. Right. And it was eventually revoked. And then he went to trial on battery and was found not guilty. But that's beside the point. Because a sexual assault could be anything from that relatively minor misconduct. And I will grant it's misconduct. He was... But certainly if this thing had happened at school, it would have been. Um, a subject to a complaint into action under Title IX. Absolutely. Or a school trip or something. Absolutely. No, that's not. I mean, this seems quite beside the point. Okay. Which goes to the second point about talking about calling the police. To put that in perspective, it's as if the girl didn't go to school there. So the school receives reports that the boy had sexually assaulted a girl that didn't go to school there. They're not going to go punish him for what he did outside of school. What they're going to do is be concerned about what happens in school. And that's the purpose of the harassment form. And that's the focus of the Title IX law. The elements of Davis. And whether or not you take reasonable steps to resolve that harassment and try to help them to feel more comfortable at school so they can go to school and get their education. In this case, there is no evidence that Sage International Charter School did anything but try to. Did they separate them in class until they were required to do so by the Temporary Restraining Order? They had not separated them. It happened, I mean, all of this happened within a three-week period. So, I mean, the TRO came in literally the day after they said we're not going to punish him because it happened outside of school. And the next day they had this restraining order and they were trying to measure out the classrooms to comply. They had separated their lockers. They had talked to the boy. They had talked to the girl. And that's important when the conversation with the girl that's in the record is important. That was what they were acting on. And they specifically asked her, has he been harassing you here in school? She said, no, I feel uncomfortable. And he talks to my girlfriends. Now, she... And he makes bad faces. And he makes, yeah, gives me evil glares or bad faces. Correct. But she never said that those were all necessarily linked to what happened to us before off campus. And if you look at, again, the information that school had, happened during school break. They were boyfriend and girlfriend. They remained boyfriend and girlfriend for a while. They broke up amicably by text and said they're going to remain friends. So the school did not perceive this hostile, abusive environment inside or outside of school. And so they basically took steps. We're going to let you come see the counselor whenever you want. We're going to come check with you. We're going to keep you separated. We're going to separate your lockers. And then once the TRO went into place, they actually eventually passed a passing protocol to keep her safe. Once the TRO was lifted, they wrote a written student supervision plan that prohibited NJ from talking to AR. And so in response to your question earlier, Your Honor, what would have been different if the Title IX policies were invoked versus this harassment investigation, which in some ways is a distinction without a difference. Because if that form said Title IX harassment form and they got the exact same information and did the exact same things, we wouldn't even be here. Well, we don't know because we don't have the Title IX document. We don't. And that goes down to the point... Maybe they would have had a full-blown hearing. I don't know what would have happened. Well, but that goes down to the requirements of Title IX and the notice requirements to the funding entity that although you're prohibited from discriminating, you're not required to do affirmative acts. Now the regulations have guidelines to help with compliance, but those are only enforceable by, for example, Department of Education or Department of Justice, depending on who's involved in the case. They cannot be enforced directly by a private person. So the only question is, did they violate Title IX? Did they discriminate? Did they fail to take any steps? Did they give permission to this gentleman to sexually harass her? And the answer to that question is absolutely not. They took multiple steps to stop any kind of discrimination, any kind of harassment. They never gave him permission. Well, but they didn't, apparently, at the outset, separate their classes. Now, I gather that there was a problem doing that. This is a small school. Yes. They didn't do it. As a practical matter, they would have had to deprive him of his education. Well, that's not what happened. They separated him from his classes. Well, just a minute. My understanding is that when they did have to do it, they managed to do it. Well, they did it remotely. By having him attend vicariously. And since we're all attending everything vicariously right now, it doesn't seem... Right. But the point there, Title IX prohibits discrimination. It doesn't require the following of any particular procedures. You just can't discriminate. And if you take any steps that are not unreasonable, you're not discriminating. We submit that they took multiple steps that were reasonable. Were they perfect? Well, he had to sit next to her in class. Was that reasonable? He never sat next to her in class. Oh, do we know that? I just was told before they did. I don't remember seeing that correctly, but do we know it? They were in the same classroom, but they weren't sitting next to each other in class. And actually, when the student supervision plan was put in place, there was a specific statement that said they would need to be physically separated as far as possible. And he could not contact her after this. They were trying to do everything they could to reduce any discomfort, but also allow him to come to school, to fully participate in his class and talk to students and talk to teachers face-to-face. Because the flip side is the parents were getting a little upset that his rights were being violated. And as Gebzer says, that is certainly a legitimate consideration when deciding how to respond to a claim of harassment. In this case, again, the claims of harassment were, comparing to much more serious assaults, relatively mild. And the complaints at school were extremely mild. She acknowledged, he has never harassed me at school. He has never sent me a bad email. He has never sent me a bad text. His friends have not bothered me. She has been going to school just fine. She had this perception, and she was uncomfortable being around her ex-boyfriend. That was basically what was said in her interview to Principal Webb. And I'll state that the Principal Webb is an official person, last I checked, under Gebzer, for which the entity could be found liable under Title IX. So I don't agree with the argument that there was no official action by Principal Webb. She was not just helping. She was running the investigation and providing accommodations as the principal of the students. And Micah Doremus, as the Title IX coordinator, had oversight. But he was basically following her lead on the direct investigation. And she is considered an official of the school under Title IX law and the court statements in Gebzer. So I don't think that distinction really makes any difference here. I did want to talk about the discussion in Mansurian about the commonality between an official policy and an official decision. The important part there is proof of intentional discrimination. And in this case, there's just no proof of an intent to discriminate against A.R. because she was... Oh, the standard specifically here is deliberate indifference, right? Right, but we're trying to parse out what deliberate indifference means. And basically... It doesn't mean intentional discriminating. I'm sorry? It does not mean intentional discriminating. Well, what it means is that the actions are so inadequate, or there is such a refusal, as Gebzer says, there is a refusal to take action,  which is the permission to discriminate. And so, in that regard, deliberate indifference, if you interpret it the way it's actually applied, it's saying, yeah, I know there's some really bad discrimination going on, but we'll give them permission. You're just the 11-year-old. We're not going to do anything about it. We're not going to investigate. We're not going to interview your kids. We're not going to take any action. We're just going to look the other way. That's what deliberate indifference is. And to me, my interpretation is that's giving permission to discriminate, which is what the statute prohibits. And so, in that regard, the deliberate indifference cases, or the official decision cases, are actually very similar to the official policy cases, because in the end, there's proof of discrimination through that process. And again, I said at the beginning, the difficulty is the language of the statute is a prohibition, and there's no requirement to act in the statute. But when you learn about a child harassing another child, the deliberate indifference standards, all of a sudden requires some action. So what level of action is sufficient to prevent you from being accused of allowing discrimination? And where is it insufficient? In this case, the multiple steps, thorough steps, careful steps taken over a three-week period, 12 school days, I mean, 14 school days was all that's involved here. And these pages of actions shows that they certainly were not deliberate indifference. They were trying their best. It was the most important thing that Counselor Hart and Principal Webb did every day, was checking with these students and making sure things are going okay. That's the farthest thing from deliberate indifference, and that's certainly the farthest thing from discrimination based on sex. I see I'm right at my spot. That's what I need to say. If anybody has any questions, we appreciate it. I have nothing else. Anybody else? Thank you very much. Thank you. We'll have Ms. Rainey. I don't remember how much time you had, but let's make it two minutes. Go ahead. Yes, Your Honor. With respect to the school's response, again, the responses they did take were not in response to the girl's report. They were in response to police, the temporary protection order. Well, they did take some steps directly in response to her report, namely interviewing NJ, telling him to stay away from her, moving their lockers, telling her that they would support her to make her feel comfortable to come tell them anything that happened, and they would see what they could do about it, and so on. That was all before the police report, as I understand. Not the locker-moving incident. Okay. I thought it was, but go ahead. The other key point with the locker-moving incident, NJ violated that, and it was on a video where he, for no reason at all, the school set up in a way that he had no reason to walk down the hallway where her locker was. That's why they moved into separate hallways. There was one morning where he walked, early before school started, he walked down the hallway where her locker was located, walked right next to her, and violated the temporary restraining order that was in place. Counsel said that the school was there checking in on him every day, making sure that everything was okay. In response to her report to the counselor that he had done this, this was found at my statement of facts at 24, and in the record at 52, the response from the counselor was, nobody's perfect, he's just human. This is so indicative of the response that she was getting from the school. He's not doing anything that she- Well, just a minute. So, if that response was insufficient, what should the counselor have said? About him walking down the hallway? Well, you said the counselor said, or you characterized the counselor's reaction to the victim's report as clearly insufficient. Right. What should the counselor should have said to answer what had been sufficient? So, this again is a violent, what he's doing in that instance- My question is, what should the counselor have said to make it sufficient? She should have said, that's a violation of the temporary protection order that the police have put in place, and that SAGE is trying to enforce, we need to- But why does she have to say that? Everybody knows that it was reported to her as a violation. Nobody treated it as a violation. They told this girl to get over- Well, my question is, you said what the counselor said to the student was insufficient. What should she have said to the student? To make her answer sufficient. In other words, in the terms of Karacik, why was the counselor's reaction clearly unreasonable? Because here we have an on-campus event of the individual violating the protections that were put in place in response to the police. In response to that specific on-campus violation, there is no reaction at all from- That's just March 20th. I don't have the exact timing here, but there is a March 26th email that talks about passing period protocol, which basically says he's supposed to be escorted everywhere he goes. Was that after this event or before that? I believe that that was after the event. Right. So, that sounds like a response to it, doesn't it? And then on March 29th- That's not a response to it. That's a response to it. To avoid this happening again, right? So, escort him to his locker to grab the materials, and he can't leave the classroom unless escorted, unless he's playing restroom, and he's followed for all passing times, and so on. Okay. That's not a response to the problem? It is a response to the problem. Then when the TRO is lifted, Your Honor, the position taken by the board is that he has never done anything on campus that violates campus rules. All right. Your time is well up.  Okay.
judges: Tashima, Berzon, Collins